CORBIN *v.* THE BOARD OF COUNTY COMMISSIONERS OF WASHINGTON COUNTY, KANSAS.

*(Circuit Court, D. Kansas. August 27, 1880.)*

1. STATUTE—CONTRACT—CONSTITUTION, ART. 1, § 10.—A statute providing in effect for the return, with interest, of all money paid by a purchaser at a tax sale, if by reason of invalidity or irregularity the sale could not be consummated, constitutes, when acted upon, a contract, within the meaning of article 1, § 10, of the constitution.

2. SAME—SAME—SAME.—A subsequent statute, providing in effect that such purchaser should have no right to the return of his money in any case, unless the board of supervisors should see proper to so order, is void, in so far as it purports to apply to pending cases, and to affect existing vested rights.

3. SAME—SAME—SAME.—A subsequent statute, providing in effect that after the conveyance of the land the money should not be refunded unless the party claiming under the tax deed should deliver a quitclaim deed, " executed to such person or persons as the commissioner may direct," is a reasonable and proper exercise of the power of the legislature to modify without impairing the remedy, and is therefore valid.

Motion for judgment for the defendant on the pleadings.

*Brown & Campbell* and *Mr. Gillette,* for plaintiff.

*W. W. Guthrie,* for defendants.

McCRARY, C. J.    1. At certain tax sales made by the authorities of Washington county, Kansas, the plaintiff bid in numerous tracts of land in that county for delinquent taxes, and, having paid the sums bid, received from the treasurer of the county certificates of said sales.    The plaintiff, and those under whom he claims, subsequently paid accruing taxes upon the same lands, amounting in the aggregate to a large sum.    It is alleged by the plaintiff, that, for some of the lands so purchased, the county clerk, after the time for redemption had expired, refused to execute deeds, upon the ground that he had discovered that, for errors and irregularities in the sales, the said lands ought not to be conveyed. For the remainder of the lands purchased by plaintiff deeds were executed, but the complainant alleges that the sales were invalid, and that, under the statute of Kansas, to be presently mentioned, he is entitled to a return of the money paid by him, and interest, for all the lands bid in by him, whether deeded or not.    The answer denies the material allegations of the petition, except as to the fact that plaintiff purchased the lands in question at tax sales.    The statutory provisions to be considered are as follows: At the time of the tax sales, sections 120 and 121, Gen. St. 1868, were in force. These sections are as follows:

"Section 120. If the county treasurer shall discover, before the sale of any land for taxes, that on the account of any irregular assessment, or from any other error, such lands ought not to be sold, he shall not offer the same for sale; and if, after any certificate shall have been granted upon such sale, the county clerk shall discover that for any error or irregularity such land ought not to be conveyed, he shall not convey the same; and the county treasurer shall, on the return of the tax certificate, refund the amount paid therefor on such sale, and all subsequent taxes and charges paid thereon by the purchaser or his assigns, out of the county treasury, with interest on the whole amount at the rate of 10 per cent. per annum.

"Section 121. If, after the conveyance of any land sold for taxes, it shall be discovered or adjudged that the sale was

invalid, the county commissioners shall cause the money paid therefor on the sale, and all subsequent taxes and charges paid thereon by the purchaser or his assigns, to be refunded, with interest on the whole amount at the rate of 10 per cent. per annum, upon the delivery of the deed to be cancelled; and in all such cases, where the county treasurer shall have offered to the person entitled thereto his money as aforesaid, and such person shall refuse to receive it and cancel the deed, he shall not be entitled to receive any interest on the money so paid by him after the day of such offer and refusal, nor shall any recovery ever be had against the county on the covenants of such deed."

These sections remained the law unchanged until 1876, when they were respectively amended as sections 145 and 146 of chapter 34, Laws 1876, and all the old sections were repealed. Section 145 is as follows:

"Section 145. If the county treasurer shall discover, before the sale of any lands for taxes, that, on account of any irregular assessment, or from any other error, such lands ought not to be sold, he shall not offer the same for sale; and if, after any certificate shall have been granted upon any sale, the county clerk shall discover that, for any error or irregularity, such land ought not to be conveyed, he shall not convey the same. And the county treasurer shall, on the return of the tax certificate with the refusal of the county clerk indorsed thereon, refund the amount paid therefor on each sale, and all subsequent taxes and charges paid thereon by the purchaser, or his assigns, out of the county treasury, with interest on the whole amount at the rate of 10 per cent. per annum."

Section 146 is as follows:

"Section 146. If, after the conveyance of land sold for taxes, it shall be discovered or adjudged that the sale was invalid, the county commissioners shall cause the money paid therefor on the sale, and all subsequent taxes and charges paid thereon by the purchaser or his assigns, to be refunded, with interest on the whole amount at the rate of 10 per cent. per annum, upon the delivery of *a quitclaim deed from*

*the party claiming under the tax deed, executed to such person or persons as the commissioners may direct.* In all such cases no interest shall be allowed after the person claiming under the tax deed shall have received notice that such deed has been discovered or adjudged invalid."

This remained the law until 1879, when said sections were respectively changed and repealed by chapter 40, Laws 1879. Section 2 of that chapter is as follows:

"If the county treasurer shall discover, before the sale of any lands or lots for taxes, that on account of any irregular assessments, or from any other error, such lands ought not to be sold, he shall not offer the same for sale; and if, after any certificate shall have been granted upon any sale, *the board of county commissioners shall discover that,* for any error or irregularity, such lands or lots ought not to be conveyed, *they may order the county clerk not to convey the same;* and the county treasurer shall, on the return of the tax certificate with a certified copy of such order of the board of county commissioners, refund the amount paid therefor on such sale, and such of the subsequent taxes and charges paid thereon by the purchaser, or his assigns, as may be so ordered by the board of county commissioners, out of the county treasury, with interest on the amount so ordered refunded at the rate of 10 per cent. per annum; *and in all cases in which actions shall be now pending, or may be hereafter* commenced, the refusal of the county clerk to convey any lands or lots indorsed on any tax certificate *shall not be deemed or held to constitute prima facie evidence of any irregular assessment or other error for which such lands or lots ought not to be conveyed, nor shall any judgment* be recovered against such county, or the board of county commissioners thereof, or liability held to attach therefor, under or by virtue of the provisions of said section 145, as theretofore and hereafter existing, or of section 120, *c.* 107, Gen. St., except in cases in which the board of county commissioners shall have made an order for the refunding thereof, and then only for the amount specified in the order for such refunding, and in all cases in which invalid taxes shall be included in such certificate, and only to the

extent of such invalid taxes, with 10 per cent. interest there-
on."

Section 3 is as follows:

"If, after the conveyance of lands or lots sold for taxes, it'
shall be discovered or adjudged that the sale was invalid, the
board of county commissioners *may, by proper order,* cause
the money paid therefor on the sale, together with *such* subse-
quent taxes and charges paid thereon by the purchaser or his
assigns *as they may judge proper,* to be refunded, with interest
on such amount at the rate of 10 per cent. per annum, upon
the delivery of a quitclaim deed from the party holding under
the tax deed, executed to such person or persons as the com-
missioners may direct *in such order.* In all such cases no
interest shall be allowed after the person claiming under the
tax deed shall have received notice that such tax deed has
been discovered or adjudged invalid."

Upon these facts the defendant moves for judgment on
the pleadings. If the last-named act (act of 1879) is valid
and effectual for the purpose of depriving plaintiff of the
remedy given by the pre-existing acts, then the motion must
be sustained, otherwise the case must be heard upon the
proofs. The decision of the present case depends upon the
question whether the acts of 1868 and 1876, and what was
done under them, amounted to a contract, the obligation of
which was impaired by the act of 1879. The first and second
acts are substantially alike. They differ only as to details,
and not in any substantial matter. The former was in force
at the time of the tax sales, and the latter at the expiration
of the time for redemption. They each provide for refunding
to the purchaser at the tax sale the money paid by him, in all
cases where it is discovered, before a deed is made, that for
any error or irregularity the land ought not to be conveyed;
and in all cases where, after a deed is made, it is discovered
that the sale was invalid. It is distinctly provided that in the
former case the county treasurer "shall refund the amount
paid therefor on such sale, and all subsequent taxes and
charges paid thereon by the purchaser or his assigns, out of
the county treasury, with interest on the whole amount at

the rate of 10 per cent. per annum;" and, in cases of the latter kind, that "the county commissioners shall cause the money paid therefor on the sale, and all subsequent taxes and charges paid thereon by the purchaser or his assigns, to be refunded, with interest on the whole amount at the rate of 10 per cent. per annum," etc.

These provisions are found in the revenue law of the state. Their purpose is manifest. The state is largely interested in the prompt collection of its revenue. Where the owner of property fails to pay the taxes due thereon, it becomes a matter of interest to the state to induce others to come forward and make the payment, taking a lien upon the property, which, in default of redemption, may ripen into a title. But tax titles are very uncertain, and investments in them are often precarious, because of errors and irregularities which may not be known to the purchaser, and which may vitiate the sale. In order, therefore, to induce capitalists to come forward and invest their means in such manner as to replenish the treasury, the state of Kansas, by the acts of 1868 and 1876, said to all such, "If you will bid at tax sales and pay your money, the amount invested, with interest, shall be refunded from the county treasury, in case the sale is afterwards discovered to be irregular or void." This legislation did not of itself amount to a contract, but I think it did amount to a proposition on the part of the state, which, when accepted and acted upon, became a contract binding upon the state, as well as upon the other party. In the present case, the proposition embodied in the statute was accepted by the plaintiff. Upon the faith of it he invested his money.

I know of no element of contract that is wanting. There was a stipulation, by the agreement of minds, upon a sufficient consideration, that the plaintiff, having bid off the lands at tax sale, and paid his money therefor, should be entitled to receive his money and interest from the county treasury, if, by reason of irregularity or invalidity, the sale could not be consummated. *Farrington* v. *Tenn*, 95 U. S. 679.

I am of the opinion, therefore, that the acts of 1868 and 1876, and what was done under them, amounted to a contract,

within the meaning of the contract clause of the constitution of the United States. Constitution, art. 1, § 10.

It only remains to be determined whether the act of 1879, passed after this suit was brought, impairs the obligation of the pre-existing contract. Upon this point there can scarcely be a doubt. The last act repeals the former, and substitutes for it a provision which, if valid, absolutely deprives the plaintiff of his vested rights. By the law under which plaintiff invested his money he was to have a return of his money and interest if the sale was found to be irregular or invalid. By the act of 1879 he has no right to the return of his money in any case, unless the board of supervisors shall see proper to so order. It requires no argument to show that, where a valid debt exists under a contract, an act of the legislature declaring that it shall be paid only at the option of the debtor is a void act.

The general doctrine that a state may, by legislative enactment, enter into a binding contract, the obligation of which cannot be impaired by subsequent legislation, is well settled. *Fletcher* v. *Peck*, 6 Cranch, 87; *New Jersey* v. *Wilson*, 7 Cranch, 164, 166; *Dartmouth College Case*, 4 Wheat. 518; *Bank* v. *Knoop*, 16 How. 369; *Davis* v. *Gray*, 16 Wall. 203; *Tennessee* v. *Sneed*, 96 U. S. 69; *Keith* v. *Clark*, 97 U. S. 454.

In *Edwards* v. *Kearzey*, 96 U. S. 595, it was held that the remedy subsisting in a state when and where the contract is made, and is to be performed, is a part of the obligation; and any subsequent law of the state, which so affects that remedy as substantially to impair and lessen the value of the contract, is forbidden by the constitution of the United States, and therefore void. The act of 1879, now under consideration, certainly impairs, substantially, if it does not absolutely destroy, the remedy given by the previous law, and it must, therefore, be held to be void, in so far as it purports to apply to pending cases and to affect existing vested rights. It is competent for the legislature to modify, but not to destroy or impair, the remedy. *Tennessee* v. *Sneed, supra.*

2. Section 146, c. 34, Laws 1876, quoted above, provides that if, after the conveyance of land sold for taxes, it shall

be discovered or adjudged that the sale was invalid, the county commissioners shall cause the money paid therefor on the sale, and all subsequent taxes, etc., to be refunded, etc., "upon the delivery of a quitclaim deed from the party claiming under the tax deed, executed to such person or persons as the commissioners may direct." This provision, although enacted after the tax sales, is a reasonable and proper exercise of the power of the general assembly to modify without impairing the remedy; and before plaintiff can recover upon so much of his claim as is based upon sales and deeds executed, he must allege and show that he offered to quitclaim "to such persons as the commissioners might direct," and that the offer was refused.

The allegation in the petition that plaintiff offered to quitclaim to defendants is not sufficient. Plaintiff may have leave to amend in this respect.

3. It is insisted by defendants' counsel that, after the refusal of the county clerk to make deeds as alleged in the first cause of action, he reconsidered his action and tendered in writing such deeds. The clerk has no power to reconsider his action in such a case, unless it can be shown that it was taken under a mistake. If the defendants can now show that the sales were regular and valid, and that the refusal of the clerk was in ignorance of the facts, then the plaintiff cannot recover, but must accept the deeds. If the clerk refused to make deeds, as alleged, then the burden is upon the defendants to show the validity and regularity of the sales.

The motion for judgment for defendant on the pleading is overruled.