Hannah Delee, Executrix of the Estate of Julia Hart-
nett, Deceased, Appellant, v. Edward D. Leahy
and Catherine Leahy, Appellees.

Gen. No. 37,629.

Opinion filed December 24, 1934.

WILLIAM J. GLEASON and THOMAS M. DALY, both of
Chicago, for appellant.

CRAHEN, SULLIVAN, O'TOOLE & SULLIVAN, of Chicago,
for appellees.

MR. PRESIDING JUSTICE O'CONNOR delivered the opin-
ion of the court.

November 29, 1933, plaintiff, as executrix of the
payee of a promissory note, brought suit against the
defendants, makers of the note. There was a trial

before the court without a jury, and a finding and judgment in defendants' favor and plaintiff appeals.

The record discloses that on March 4, 1920, Julia Hartnett lent the defendants, Edward D. Leahy and Catherine Leahy, his wife, $1,500 and on that date they executed their principal promissory note for $1,500, due five years after date with interest at five per cent per annum. Julia Hartnett, the payee, died March 2, 1933, and her executrix is the plaintiff. The defendants filed an affidavit of merits in which they set up that on March 11, 1929, the payee, Julia Hartnett, orally agreed with the defendants ''to cancel the note . . . upon the payment of Five Hundred Dollars, which said sum was then and there paid, the only further obligation upon the defendants being that they should pay her the sum of Seventy Five ($75) Dollars per year, the interest on said principal note, until the time of her death, and that the principal sum due under the note was entirely cancelled.''

On the trial the plaintiff offered the note and rested. The defendants called Maurice Leahy, a brother of defendant Edward D. Leahy. He testified that he knew Julia Hartnett from 1907 until she died; that on March 11, 1929, he was at defendants' home; that at that time defendants Mr. and Mrs. Leahy and the payee of the note, Julia Hartnett, and himself were present; that there were no other persons present; that Julia Hartnett said ''she needed some money. And she was there that night for the purpose of settling this note that we speak of here for $500 and an annuity of $75 a year after that. . . . For her lifetime''; that the defendant Edward D. Leahy then paid Julia Hartnett $500 in cash; that thereupon Julia Hartnett gave Edward D. Leahy a receipt signed by her, as follows: ''March 11, 1929 Received From Edward D. Leahy. Five Hundred Dollars Julia Hartnett.'' On cross-examination the witness testified that

the note in suit, which is a printed blank form of note, was filled out by the witness in his handwriting and signed by the two defendants; that "I made up that note at the time that my brother got that money"; that he did not know whether his brother owed any other money to Julia Hartnett and that the $500 in question was paid on March 11, 1929, and applied to the payment of the note; that it was understood that the note would be delivered up and canceled. The witness further testified that he graduated in the law; that at the time of the execution of the receipt for $500 it was understood that the note would be delivered up and canceled; that Julia Hartnett was an old friend of his brother's folks; "We had no idea she would forget about it. It was understood she would cancel the note and tear it up." The witness further testified that about 10 days before March 11, 1929, when the $500 was paid, he heard that the payee, Julia Hartnett, needed money; that "she had some bills to pay or something. She was going to buy a house or something. I don't know. I haven't the slightest idea. She needed the $500 anyhow"; that he was maybe a fourth or fifth cousin of Julia Hartnett. The witness was then asked: "Q. How did you happen to be there this evening? A. My brother told me ten days before she had made this suggestion. I went up there. Something you start you might as well finish. I went there in the same capacity, to be sure my brother was all right on the thing." He further testified that no money was paid after the $500, no annual payment of $75 was made.

Hannah Delee, the executrix, testified in rebuttal and her testimony is to the effect that in 1915 or 1916 there was apparently another note for $500 signed by the defendants and given to Julia Hartnett, although the evidence in this respect is unsatisfactory.

The trial court held that the payment of the $500 together with the promise of payment of $75 a year during the lifetime of Julia Hartnett was sufficient consideration to pay the note, and we think this holding was correct; but we are of opinion that the evidence does not warrant the finding that any such agreement was made. The evidence on this phase is too uncertain and unsatisfactory, when taken in consideration with all the evidence in the case. Maurice Leahy, on whose testimony the case was decided, testified that he was graduated in the law; that he drew the note in 1920; that in 1929, when it is claimed $500 was paid to Julia Hartnett, he was present, having learned some 10 days before that the meeting was to be held, so that he could see that his brother was protected; and yet there is not a word in the receipt that would indicate the $500 was to be applied on the $1,500 note, nor is there anything to indicate that the note was to be canceled or destroyed or returned to the makers; there is no reference whatever to such note. The note was produced on the trial. It bears no indorsement. It is admitted that $1,500 was lent by Julia Hartnett to the defendants in 1920, the time the note was made. It would have been a simple matter to have stated something in the receipt that would show that the $500 and the $75 annually was to be in full payment of the note; especially is this so when the witness was a graduate of the law and went to his brother's home for the express purpose of seeing that the brother was taken care of in the settlement.

It has long been well settled that courts lend a very unwilling car to statements of witnesses as to what dead people have said. We had occasion to consider this question in *Jamison v. Boxderfer,* 268 Ill. App. 614, not reported, where defendant was claiming a $7,500 mortgage as a gift from the deceased, and in passing on the question of the testimony of a witness as to

what the deceased had said, we said: "It is also the law that courts lend a very unwilling car to statements of what dead men have said. *Lea v. Polk County Copper Co.*, 62 U. S. 493. In that case the court said (p. 504): 'In 1856, when these depositions were taken, John Davis was dead, and courts of justice lend a very unwilling ear to statements of what dead men have said.' And in 22 C. J., p. 291, in discussing the testimony of witnesses as to statements made by a deceased person, it is said that 'it is impossible, in most cases, to convict the witness of perjury if his testimony is wilfully false, testimony as to the oral statements of deceased persons, which is therefore regarded as the weakest kind of evidence and subjected to the closest scrutiny.' And our own Supreme Court in the case of *Laurence v. Laurence*, 164 Ill. 367, in discussing this question said (p. 377): 'Evidence of admissions made by a person since dead should be carefully scrutinized, and the circumstances under which they were alleged to have been made carefully considered with all the evidence in the case. Such evidence is liable to abuse.' "

We think the finding of the court to the effect that an oral agreement was made between Julia Hartnett and the defendants is against the manifest weight of the evidence, and the judgment of the municipal court of Chicago is reversed and the cause remanded.

*Judgment reversed and cause remanded.*

McSurely and Matchett, JJ., concur.