In re Estate of Carl August Carlson, Deceased.
Alice H. Moreen, Appellant, v. Estate of Carl August Carlson, Deceased, Appellee.

Gen. No. 38,388.

Opinion filed June 22, 1936. Rehearing denied July 6, 1936.

JENKINS & KIRKPATRICK, of Chicago, for appellant; DONALD KIRKPATRICK, PAUL E. MATHIAS and LEE J. QUASEY, all of Chicago, of counsel.

LEVINSON, BECKER, PEEBLES & SWIREN, of Chicago, for appellee; ANDERSON & ANDERSON, of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

Alice H. Moreen, as (appellant) claimant, filed a claim in the probate court of Cook county in the estate of Carl August Carlson, deceased, seeking the allowance of the sum of $30,000 for damages resulting from the breach of an agreement between Carl August Carlson, now deceased, and the claimant, whereby, in consideration of services rendered and to be rendered to Carlson by the claimant, he agreed to bequeath and leave his entire estate to claimant upon his death, which agreement was alleged to have been fully performed by the claimant up to the time of Carlson's

death. After a hearing in the probate court an order was entered allowing the sum of $30,000 as a claim of the sixth class. The administrator of the estate of Carl August Carlson, deceased, prayed for and was allowed an appeal to the circuit court of Cook county, where this matter again came up for hearing and was submitted to the court without a jury. The court ordered that the claim heretofore allowed by the probate court for $30,000 be set aside and the claim allowed in the sum of $728 as a claim of the sixth class, payable in due course of administration. From the order of the circuit court the claimant perfected her appeal to this court.

The claimant's case is based upon an alleged oral contract whereby Carl August Carlson, now deceased, agreed in his lifetime to leave his entire estate to claimant upon his death in consideration of claimant's promise to care for, nurse, serve and attend Carlson during the remainder of his life.

Carlson and his wife came to the United States from Sweden and settled in Minnesota where they lived on a farm. As the result of their marriage a boy was born to them. During their residence in Minnesota they acquired a farm, which was subsequently sold, and Carlson and his wife moved to Chicago. Shortly after moving to Chicago their son, who was then 21 years of age, died. Claimant is a daughter of a sister of Carlson's wife. She visited Carlson and his wife regularly and was present at the time of the death of his wife in January, 1932. Claimant took charge of the arrangements for the funeral of Carlson's wife, and at the same time delivered the ashes of their recently deceased son to the undertaking establishment and requested that they be placed in the casket with Mrs. Carlson's body. At this time Carlson was ill and the funeral was delayed several days because of his illness and in order that he might recover sufficiently

to attend the funeral. Carlson was suffering from a gangrenous infection of his foot, which infection ultimately resulted in his death. Carlson was without relatives in this country, and after his wife died he lived alone. Claimant alleges that Carlson entered into a contract·with her whereby he agreed to leave all of his property to her in consideration of her promise to care for and attend him during the remainder of his life.

From the evidence introduced in this case it appears that Carlson was not a talkative man; he did not confide even in the doctor who treated him during the last year of his life, but he did discuss claimant and his regard for her with the landlord, who often visited him, and also with the janitor and his wife, who lived in basement rooms next to those occupied by Carlson.

Flora Hansen, the landlady, testified that Carlson and his wife rented two rooms in the basement in the front of the building in October, 1931; that Carlson's wife died three months later in January, 1932; that the witness saw Carlson and his wife frequently before the death of the wife, and after her death she saw Carlson almost every day; that Carlson often mentioned claimant to her and talked about how faithful she had been to him, and would state that she would be well paid for what she had done for him. It appears from the evidence of this witness that she was present on the night before Carlson died; that he then told her he had not fixed it so Alice would get his property, but that he would do so. She further testified that the claimant cooked, washed, scrubbed, ironed and did the general housework, and dressed Carlson's sore foot, and that she saw the claimant in Carlson's home every day after his wife's death.

Shelby Hunter, the janitor of the building where Carlson lived during the last year of his life, and who occupied rooms in the basement, testified that he saw

Carlson practically every day during 1932, and that he visited him in his rooms at least once a week; that Carlson had talked to the witness about claimant and said she had been good to him and he was going to see that she was taken care of if anything happened to him. Hunter's wife also testified that she had seen the claimant there regularly, and that she took care of Carlson's foot, straightened up the house for him and prepared food for him to eat.

Osmond Inscho, a witness, testified he was engaged to marry claimant, and, with her, frequently called on Carlson and his wife; that after Carlson's wife died the witness continued to visit Carlson; that on at least three different occasions Carlson told the witness of his understanding and contract with claimant; that the first of these conversations occurred in 1932—the first time the witness visited Carlson after his wife's death; that in this conversation Carlson spoke about the death of his wife and his own condition, and stated that he had talked with claimant and had asked her to care for him the remainder of his time on earth, and promised to leave her everything he possessed; that again, four or five weeks before Carlson's death, he spoke to this witness of his promise to claimant and said he was going to put his possessions in a trust fund for her to keep her people from getting his property; that at this time the claimant was present and heard this conversation.

The claimant introduced evidence of several witnesses to show performance.

When Carlson died he left an estate of about $34,000. On January 20, 1933, the public administrator was appointed administrator of the estate. Carlson left, according to the Table of Heirship, three sisters and one brother, and the children of another brother, who had predeceased him. In July, 1933, about six months after Carlson's death, the claimant in this case filed a peti-

tion in the probate court asking to have the appointment of the public administrator set aside and to have herself appointed administratrix of the estate, on the ground that she had "rendered valuable services to the said Carl August Carlson, deceased, and his wife who predeceased him, and that such services were rendered over a period of about three years preceding January 20, 1933, all at the instance and request of the said Carl August Carlson, deceased"; that in the performance of said services she had "expended various sums of money and devoted much time toward the care and comfort of the said Carl August Carlson and his wife, at great inconvenience and sacrifice on her part"; that the deceased was greatly indebted to the claimant for services rendered and for which she is entitled to a large sum of money. She claimed therefore to be a creditor of the estate, and that, by the appointment of the public administrator, she was deprived of her right of preference. This was denied by the court.

Claimant must establish by the evidence that an agreement was entered into whereby she was to perform services and to receive as compensation for such services all property belonging to Carlson at the time of his death. Proof of the contract is largely dependent upon the evidence of Osmond Inscho.

Claimant does not contend that the conversations and statements made by Carl August Carlson to the landlady, the janitor and the janitor's wife constituted clear proof of the existence of the contract alleged by the claimant, but that they do show the existing relationship between the parties and their attitude, feeling and disposition toward each other. Then, too, the claimant suggests that the conversations and statements, together with the earlier statements made by the decedent in the discussions during the lifetime of

the decedent's wife, do show the probability and likelihood of the making of the contract as alleged by the claimant.

In discussing the questions before the court we must have in mind that in order to entitle claimant to recover it is necessary for her to establish by proper evidence that there existed between her and the deceased in his lifetime a contract by which the deceased in consideration of some act or thing to be performed by the claimant agreed to make the particular bequest claimed, and that the claimant has performed.

In the discussion of the question as to whether or not a contract was entered into between the deceased in his lifetime and the claimant, we are controlled by the rule applicable to evidence in cases of this character. This court in the case of *Delee v. Leahy,* 278 Ill. App. 178, said:

"It has long been well settled that courts lend a very unwilling ear to statements of witnesses as to what dead people have said. We had occasion to consider this question in *Jamison v. Boxderfer,* 268 Ill. App. 614, not reported, where defendant was claiming a $7,500 mortgage as a gift from the deceased, and in passing on the question of the testimony of a witness as to what the deceased had said, we said: 'It is also the law that courts lend a very unwilling ear to statements of what dead men have said. *Lea v. Polk County Copper Co.,* 62 U. S. 493. In that case the court said (p. 504): "In 1856, when these depositions were taken, John Davis was dead, and courts of justice lend a very unwilling ear to statements of what dead men have said." And in 22 C. J. p. 291, in discussing the testimony of witnesses as to statements made by a deceased person, it is said that "it is impossible, in most cases, to convict the witness of perjury if his testimony is wilfully false, testimony as to the oral statements of deceased persons, which is therefore re-

garded as the weakest kind of evidence and subjected to the closest scrutiny." And our own Supreme Court in the case of *Laurence v. Laurence,* 164 Ill. 367, in discussing this question said (p. 377): "Evidence of admissions made by a person since dead should be carefully scrutinized, and the circumstances under which they were alleged to have been made carefully considered with all the evidence in the case. Such evidence is liable to abuse." ' "

The testimony that has any particular bearing upon this claim is that of the witness Osmond Inscho, from which it appears that Carlson, the deceased, told the witness in their first conversation that he had talked with claimant and asked her to care for him the remainder of his time on earth, and promised to leave her everything he possessed, and again, shortly thereafter he talked to this same witness in the presence of the claimant, and from the evidence it appears that Carlson had in mind putting his possessions in a trust fund for her, to keep her people from getting his property.

The claimant offered evidence of several witnesses to the effect that she had taken care of Carlson in performance of what is alleged to be a contract with the deceased, but in order to have a perfect picture of the situation, this court must take into consideration the claimant filed a petition in the probate court of Cook county, the purpose of which was to remove the public administrator appointed by the probate court, on the ground that she was a creditor. The petition was offered in evidence. In this petition the claimant stated that she had "rendered valuable services to the said Carl August Carlson, deceased, and his wife who predeceased him" at his request, and that in the performance of the services she had "expended various sums of money and devoted much time toward the care and comfort of the said Carl August Carlson and

his wife, at great inconvenience and sacrifice on her part, and that the deceased was greatly indebted to the claimant for the services rendered.''

This is in contradiction of the position claimant now takes in the proceeding here on appeal. It is not altogether clear as to the terms of this alleged contract upon which she claims she is entitled to all the property of the deceased—amounting to approximately $34,000—although there is some evidence, as outlined in this opinion, that she was to receive all he had; and, then again, that he was to provide a trust fund for her.

In a case of this character, as the courts have indicated, the evidence is subject to close scrutiny, and for the very good reason that Carlson, now dead, is not present and the terms of this alleged contract are entirely dependent upon the evidence of persons who may be interested in the outcome of the litigation— and this especially with reference to the witness Osmond Inscho, who stated that he was engaged to marry claimant, and who would naturally be interested in the outcome of the proceeding. If claimant had relied upon the position taken as a creditor when she filed the petition to remove the public administrator, it may be that the court would have allowed her to recover for the services she rendered to the deceased. There seems to be no question that she rendered services for which she should have been paid, but in this case upon appeal she takes the position that she had a contract with the deceased which entitled her to all of his property. However, we are not satisfied that the evidence justifies her claim, and we are constrained to agree with what was stated in the case of *Delee v. Leahy, supra,*—quoting from *Laurence v. Laurence,* 164 Ill. 367: ''Evidence of admissions made by a person since dead should be carefully scrutinized, and the circumstances under which they were alleged to have been made carefully considered with all the evidence in the case. Such evidence is liable to abuse.''

Since the evidence is not clear nor sufficient to establish the contract in question, this court would not be justified either by the facts or the law governing such litigation in entering an order allowing claimant the sum of $30,000 as damages resulting from the alleged breach of a contract with the deceased. On the other hand, the allowance by the court of $728 for alleged services rendered by the claimant in caring for the deceased in his lifetime is not supported by any evidence nor prayed for in the claim filed by claimant; therefore this judgment order is reversed, and the cause is remanded with directions to the trial court that the claim of the claimant be disallowed.

*Judgment reversed and cause remanded with directions.*

HALL, P. J., and DENIS E. SULLIVAN, J., concur.