Henry Thomas and Evangeline Thomas, Appellees, v.
National Paper Napkin Manufacturing Company
et al. Appeal of National Paper Napkin Manu-
facturing Company et al., Appellants.

Gen. No. 39,077.

Opinion filed May 19, 1937. Rehearing de-
nied June 2, 1937.

MORRIS K. LEVINSON, of Chicago, for appellants.

A. A. PANTELIS and HARRY A. LINAWEAVER, JR., both
of Chicago, for appellees.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal from a decree entered in the circuit court awarding the plaintiffs, Henry Thomas and Evangeline Thomas, his wife, title to 3,498 shares of the common capital stock of National Paper Napkin Manufacturing Company, as well as an accounting from defendants based on a complaint in chancery brought by plaintiffs.

Plaintiff Henry Thomas contends that Thomas N. Deligianes, during his lifetime, gave to the plaintiffs Thomas and his wife 3,498 shares of the capital stock of the National Paper Napkin Manufacturing Co., represented by two certificates, as a gift *causa mortis* and upon a demand made of the defendant corporation, it refused to recognize them as stockholders and, consequently, plaintiffs filed a bill to compel the issuance by said company of such stock certificates and asked that an accounting for money which plaintiffs claimed was due and owing from Deligianes as well as from the corporation.

Deligianes died July 25, 1932, and one Andrew Deligianes, his brother, was made executor of the estate. Plaintiffs claim in their bill of complaint that they being the true owners of said stock went to the National Paper Napkin Company, defendants, and told said company that they were the legal holders and owners of the said stock certificates which they exhibited to the agents of the defendant corporation, as well as to the executor of the estate, and asked that new certificates of stock be issued to them. Plaintiffs further contend that they were advised by the defendant corporation that it would accept plaintiffs as such owners of said stock and that it would upon request issue new certificates in the names of the plaintiffs.

Plaintiffs further contend that shortly thereafter they requested the issuance of said certificates and on October 26, 1933, they made a written demand upon

the defendant corporation to make such transfer, informing said corporation that the certificates were in plaintiffs' physical possession, but that the corporation has failed and refused to transfer said certificates.

Plaintiffs further contend that they held said certificates in their possession from the day of assignment and delivery to them up until December 28, 1933, when the same were either lost or stolen; that they stand ready and willing to indemnify the new corporation if they will issue the new certificates.

Plaintiffs further contend that the said defendant corporation caused spurious certificates to be issued to some person or persons unknown to plaintiffs; that Thomas N. Deligianes, deceased, Andrew Bourdes and William Yiakoumelos were the same officers and directors of Narrownap Folding Machine Company and National Paper Napkin Manufacturing Company, National Paper Napkin Company, a common law trust, consisting of Andrew Bourdes, Thomas N. Deligianes, William Yiakoumelos, George Stamos, George Bourdes, Paul Rellias and Peter Danos, and that the same persons are officers and directors of National Paper Napkin Manufacturing Company, and that by manipulation of royalty contracts, salary agreements and other spurious arrangements have caused said defendant corporation to become depleted, and have greatly impoverished said corporation and National Paper Napkin Company, a trust estate, and further pray for a receiver and an accounting.

Plaintiffs further contend that the defendant corporation is indebted to the plaintiff Henry Thomas to the extent of $1,700 for cash which he gave them to purchase an interest in said last named company and that said corporation is indebted to plaintiff Henry Thomas in the sum of $10,000 in cash or $16,000 par value of the company's unissued preferred stock.

Plaintiff further contends also that he is the owner of certain patent rights in the Narrownap Folding Machine Co., and that said patents or contracts are in the possession of said trustees; that plaintiff gave other large sums of money to purchase an interest in said company.

All the allegations were denied by the defendants and proof was offered and admitted by which the decree found in favor of plaintiffs, directing that the stock of the National Paper Napkin Manufacturing Company be issued in favor of plaintiffs and also that plaintiffs are entitled to an accounting. The master's report and the decree found in favor of the major portion of plaintiffs' claims as to the Narrownap Folding Company.

It is unnecessary to set out in detail the evidence and finding of the court for the reason that this decree must be reversed and the cause remanded for a new trial because of the errors committed in the admission of certain evidence, the refusal to admit other competent evidence and for other reasons herein stated.

At the hearing before the master the testimony of Thomas and other interested parties was permitted to be introduced as against the executor of the estate of Deligianes, in violation of chapter 51, paragraph 2, section 2, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 107.068; that when the evidence on behalf of defendants was offered of an expert witness as to his tracing of the signatures of Deligianes on the assignment clause of the so-called lost certificates of transfer from Deligianes to Thomas and his wife, it was charged to be forgery, and, when offered in evidence it was refused by the master. This was error.

One of the defenses in this case was charges of forgery, both as to the assignment of the stock certificates as well as the promissory notes, and evidence tending to prove such charges was pertinent in the

trial of the cause. The evidence should not have been excluded.

As was said in the case of *Penix v. Sloan,* 3 Fed. 358:

"Where the genuineness of the signature to a deed was in issue, and the deed was not produced, and it did not appear that it had ever been in the possession of plaintiffs, it was permissible for them to prove the appearance of the signature by secondary evidence, and for that purpose a duly authenticated tracing of it was admissible."

Before the decree was entered, counsel for defendant filed a petition setting forth newly discovered evidence which he offered to introduce which could not, from the very nature of things, have been available at the first hearing. The deceased against whose estate this claim is being made, having no family, lived alone in a hotel: It is claimed that the plaintiff in this case took advantage of him while he was very sick, just prior to his death. After searching for some time, but too late for presentation before the master, the defending executor found certain documents, papers and accounts of the deceased, which if admitted in evidence would possibly have some effect upon the decision of the master and chancellor. The court dismissed the petition without requiring an answer thereto. In this the court was in error.

This is an unusual case—supported by unusual testimony. The court appreciates the difficulty in making proof of claim against the estate of a deceased person when death intervenes and, by the same token, the difficulty of making a proper defense on behalf of a decedent's estate by those who are charged with this duty and yet not in possession of or familiar with all the facts. In this case, the deceased had been ill and his death had been forecast for many weeks. He was, just prior to his death, a daily associate and in charge

of the plaintiff in the latter's hotel. Plaintiff Henry Thomas claims that immediately prior to Deligianes' death he assigned this stock valued at upwards of $100,000 to said plaintiff and his wife as a gift *causa mortis*.

The certificates herein referred to were not produced by plaintiff and no claim was made against the defendant company, National Paper Napkin Mfg. Co. and the estate until some 16 months later. The testimony supporting this claim is mainly in acknowledgment form—that is, the testimony to support plaintiffs' claim to the stock is principally by witnesses who say they were present at unusual places and testified to equally unusual statements alleged to have been made by the deceased.

We do not wish to pre-judge this case, but we are of the opinion that greater latitude should have been given by the master and chancellor as to the introduction of evidence so that a proper defense could have. been made by the representatives of the deceased.

As was said in the case of *Delee v. Leahy,* 278 Ill. App. 178, at page 181:

"It has long been well settled that courts lend a very unwilling ear to statements of witnesses as to what dead people have said. . . . *Lea v. Polk County Copper Co.,* 62 U. S. 493. In that case the court said (p. 504): 'In 1856, when these depositions were taken, John Davis was dead, and courts of justice lend a very unwilling ear to statements of what dead men have said.' And in 22 C. J., p. 291, in discussing the testimony of witnesses as to statements made by a deceased person, it is said that 'it is impossible, in most cases, to convict the witness of perjury if his testimony is wilfully false, testimony as to the oral statements of deceased persons, which is therefore regarded as the weakest kind of evidence and subjected to the closest scrutiny.' And our Supreme Court in the case of

*Laurence v. Laurence,* 164 Ill. 367, in discussing this question said (p. 377): 'Evidence of admissions made by a person since dead should be carefully scrutinized, and the circumstances under which they were alleged to have been made carefully considered with all the evidence in the case. Such evidence is liable to abuse.' "

We are of the opinion that instead of entering the decree, the court should have re-referred the matter to the master to hear the evidence offered in support of the allegations set forth in said petition and to have directed the master to receive in evidence the tracing of the signatures offered.

As to the fees of the master the latter should have been directed to conform to Rule 58 of the rules of the circuit court relating to procedure before masters in chancery. If objections to fees are then filed, it is the duty of the court to request the master to justify the amounts of his charges in a hearing before the court.

For the reasons herein given the decree of the circuit court is hereby reversed and the cause is remanded with directions to hear the cause pursuant to the views herein expressed.

*Decree reversed and cause remanded with directions.*

HEBEL and HALL, JJ., concur.